(No. 31204)
BENJAMIN H. SANBORN Co., Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CHRISTINE M. McGRANE, Plaintiff in Error.)

*Opinion filed January 18, 1950.*

PETER M. KELLIHER, of Chicago, for plaintiff in error.

KLOHR & MERRICK, of Chicago, (HUBERT C. MERRICK, of counsel,) for defendant in error.

Mr. JUSTICE WILSON delivered the opinion of the court:

Christine M. McGrane filed an application for adjustment of claim against Benjamin H. Sanborn Company, alleging that she suffered an injury to her left arm as the result of an accident arising out of and in the course of her employment on January 3, 1948. An arbitrator decided that the applicant sustained an accidental injury arising out of and in the course of her employment resulting in thirty-five per cent permanent loss of use of the left arm, and awarded compensation benefits, together with an amount for medical expenses. The Industrial Commission affirmed the award. Thereafter, the superior court of Cook County adjudged that the decision of the commission was contrary to law and, accordingly, set aside and reversed its decision. We have allowed the petition for writ of error of the employee, Christine M. McGrane.

The facts are not in dispute. Christine M. McGrane, thirty-eight years of age, was employed by Benjamin H. Sanborn Company, in Chicago, as secretary to its president, Philip Page Young, and, in this capacity, was head of the

correspondence department. She worked five days each week, Monday through Friday. According to the claimant, on Friday afternoon, January 2, 1948, Young asked her to work on Saturday, January 3, for the reason that he was leaving the city on the following Monday and had considerable correspondence and mail requiring attention before his departure. When she agreed, Young asked her to obtain from the bookkeeper a certified check for one thousand dollars to purchase stamps to replenish a relatively new postage meter machine which was low and had to be refilled, and directed her to take the check home since the bookkeeper would not be present at the place of business on Saturday. Young told her that William Blask, the head of the shipping department, would call for her at her home on Saturday morning to take her to the post office. Young asked Blask to call for Miss McGrane, take her to the office, pick up the postage machine which was rather heavy, or, according to Young, "to heavy for anyone to carry," bring it down to the automobile, and then take claimant and the machine in his car to the post office to have the machine replenished and deposit the check for the amount of the postage at the same time. Blask, who lived near claimant, as a matter of convenience to her in arriving at her place of work, customarily had been driving her to and from her place of employment for a period of three years. Claimant carried the check home, as requested. The stamps were to be obtained at a branch post office, located at State and Twenty-second streets, and claimant was responsible for turning over the check to the proper postal authorities for having the money registered in the machine. Although, previously, claimant had taken checks home which were to be delivered to the post office for a machine deposit, and for advance deposits on bulk mailing, this was the first time during the twenty-two years of her employment she had been instructed to take a certified check home for the express purpose of delivering it to the postal authorities

when Blask took the machine to the post office. On the morning of January 3, Blask called for claimant at her home about 7:25 and, while en route to the office to obtain the machine, his automobile skidded on an icy street, went into a spin, and hit the curbing and a lamppost. Claimant sustained an injury to her left arm as the result of this accident. The extent of her injury and the medical expenses incurred incident thereto are not in controversy. Upon cross-examination, claimant added that she was not going inside to the office on the morning of January 3. Upon re-cross-examination, she testified Young told her that he wanted to give her some dictation on Saturday morning because he was leaving the city.

The testimony of Young, called as an arbitrator's witness, corroborates the testimony of the applicant with respect to essential facts. In particular, he stated that one of claimant's duties was to purchase stamps to replenish the postage meter, it being understood she would deposit the check and pay for the postage because there were forms to be filled out at the post office which she had authority to sign but which Blask was not authorized to sign.

Claimant contends that her accidental injury arose in the course of and out of her employment and that the Industrial Commission's decision in her favor was not manifestly contrary to the weight of the evidence. The employer maintains that Christine McGrane was on her way to work when injured and that the relationship of employer and employee had not actually commenced. The precise question thus presented is whether the accidental injury was incidental to the performance of the contract of service and whether the origin or cause of the accident belongs to, and was connected with, the contract of service.

The general rule is firmly established that injuries sustained by an employee while going to, or returning from, the employer's place of business do not arise out of or in the course of the employment so as to entitle him to com-

pensation. (*Board of Education* v. *Industrial Com.* 392 Ill. 261; *General Steel Castings Corp.* v. *Industrial Com.* 388 Ill. 66; *Public Service Co.* v. *Industrial Com.* 370 Ill. 334; *Shegart* v. *Industrial Com.* 336 Ill. 223; *Fairbank Co.* v. *Industrial Com.* 285 Ill. 11.) Circumstances may, of course, exist under which an employee, in going to or returning from the place of his employment, is performing an act, incidentally, or otherwise, for the employer under his contract of employment. (*Fairbank Co.* v. *Industrial Com.* 285 Ill. 11.) An accidental injury may be compensable even if received at some distance from the employer's place of business, where it is shown that, at the time and place of the injury, the employee was doing some work connected with, or incidental to, his employment. (*Scholl* v. *Industrial Com.* 366 Ill. 588.) Stated somewhat differently, as a general rule, employment does not begin until the employee reaches the place where he is to work and does not continue after he has departed from the place of his employment. (*Board of Education* v. *Industrial Com.* 392 Ill. 261.) Whether an employee who is on his way to or from the place of his employment is in the line of his employment depends upon the particular circumstances of each case and is largely a question of fact, and the general rule is inapplicable where the duties of the employee necessarily take him away from the premises of the employer. *General Steel Casting Corp.* v. *Industrial Com.* 388 Ill. 66; *Irwin-Neisler & Co.* v. *Industrial Com.* 346 Ill. 89; *Porter* v. *Industrial Com.* 301 Ill. 76.

Claimant's argument is that her injury was sustained while performing duties necessarily taking her away from the employer's premises and that, in consequence, her employer is liable for compensation benefits. Claimant was regularly employed in the office of her employer from Monday through Friday of each week. The president of the company requested her to work on Saturday, January 3, and assigned a specific task to her which she agreed to perform.

Instructions were given to her with respect to picking up a certified check from the bookkeeper on Friday, January 2, taking it home over night, and accompanying Blask, the head of the shipping department, the next morning in his automobile, first, to the office of their employer where Blask was to obtain a postage meter machine, carry it to the car and, thereafter, take claimant and the machine in his car to a branch post office where she was to turn over the check to the postal authorities, fill out forms supplied by the Post Office Department, and refill the machine with the stamps purchased. Blask lacked authority to sign the forms and the duty devolved upon claimant, as an employee of the Sanborn Company, to go to the post office on January 3 for the purpose of signing the prescribed forms. When injured, claimant was carrying her employer's check, as directed by the president of the company. Both she and Blask were working under the direct orders of their superior when the accident occurred. Claimant was performing unusual duties for her employer on a day which, ordinarily, was a holiday for her. She was in Blask's automobile incident to the performance of her duties as a long-time employee of the company. The danger to which the icy streets on the morning of January 3 subjected her arose because she obeyed the directions of her employer and the injury to her arm occurred while engaged in service necessarily incident to the principal business of her employer.

The employer directs attention to the fact that, for a period of three years, and merely as a matter of personal convenience to her, claimant had been regularly driven to and from her employer's place of business over the same route by Blask and that the same method of transportation was used on the day claimant was injured. In *Olson Drilling Co.* v. *Industrial Com.* 386 Ill. 402, the employee, when injured was en route from an oil well, where he was employed, to the office of the company at Olney, carrying a drilling report and a time sheet, as instructed. In deciding

that his injuries were compensable, we said: "The fact that this was over the same route that he must take in going home did not in any way lessen the responsibility of his duties in carrying the reports to his employer's office. He was not carrying the reports home. He was transporting them for delivery to the office of his employer, as instructed. * * * Wolf was employed to take the reports to the office of his employer in Olney and for this purpose it was necessary to use an automobile. If the work of the employee creates the necessity for travel, he is in the course of his employment. Persons using the highway are subjected to certain traffic risks and one of them is the danger of collision. The perils of modern-day travel upon the highways are well known. The risk of accident is an ever-present menace. When it is necessitated by the employment the risks incidental thereto become risks of the employment and remain so as long as the employee is acting in the course of his employer's business."

We are of the opinion that claimant's accident had its origin in a risk incidental to the use of the highway and naturally flowing therefrom. The fact that she had not yet arrived at the office of her employer is beside the point. She was en route to the post office from the time she left her home when Blask called for her, as directed. To accomplish her employer's mission, on her day off, a Saturday, it was necessary to use an automobile, as the postage meter was too heavy for either Blask or her to carry otherwise. Her duties made this mode of travel necessary and the risks of the highway became the risks of her employment. She was performing unusual duties for her employer, duties specifically assigned to her. She was not merely carrying a check to the place of business but, instead, was carrying it to the post office and, so far as claimant is concerned, the fact that Blask was expected to stop at the office of the company en route to the post office was purely incidental and immaterial.

The employer places reliance upon cases such as *Farley* v. *Industrial Com.* 378 Ill. 234. In the *Farley case,* the injured employee, at the request of his employer, who operated a general store in the village of Huntley, regularly took a parcel containing silver money, currency, notes, and other papers home with him each evening and brought them back the next morning to the store. While repairing to his place of employment one morning, he fell on an icy sidewalk. In situations such as presented in the *Farley case,* where the injury cannot be traced to the employment as a contributing, proximate cause, and does not come from a hazard to which the employee would not have been equally exposed apart from the employment, the injuries are not compensable. The present situation differs. Here, as in the *Olson Drilling Company case,* the causative danger was peculiar to the duties of claimant, incidental to her employment because it belonged to and was connected with what she, as an employee, had to do in fulfilling her contract of service.

The employer insists that the fact claimant was carrying its check in her purse when injured was not the cause of and did not contribute to her injury. The inescapable fact, however, is that, pursuant to her employer's direction, she was carrying its check when injured and, admittedly, she would not have been injured except for her obedience to the order of the president of the company. In our opinion, the present case does not fall within the general rule that injuries sustained by an employee while going to or returning from his place of employment are not compensable, for the reason claimant was carrying her employer's check, under specific instructions to work on her day off, and was being transported, when injured, while on her employer's business en route from her home to the post office. Under these circumstances, it cannot be said that claimant's employment on Saturday, January 3, would not begin until she arrived at the company's office. Her employment began

when she left her home with the employer's check and was called for by Blask in his automobile, as specifically requested by her employer. The Industrial Commission correctly so decided, and its decision that claimant's injuries arose out of and in the course of her employment should not have been disturbed.

The judgment of the superior court of Cook County is reversed and the cause remanded, with directions to confirm the decision and reinstate the award of the Industrial Commission.

*Reversed and remanded, with directions.*