(No. 40908.—

HOMEMAKERS' LIBRARY LEAGUE CORP., Appellee, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(Candy Ambos, Appellant.)

*Opinion filed January 29, 1969.—Rehearing denied March 25, 1969.*

J. MICHAEL MADDA and CHARLES WOLFF, both of Chicago, for appellant.

PERZ AND McGUIRE, of Chicago, (ROBERT F. FERBEND, of counsel,) for appellee.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

Candy Ambos, the widow of Carl Ronald Ambos, sought to recover death benefits under the Workmen's Compensation Act for the accidental death of her husband. The arbitrator awarded compensation in the amount of $52 per week for a period of 259 weeks and one week at $32 per week. On review, the Commission affirmed the award. Upon *certiorari,* the Cook County circuit court reversed and vacated the award. From that judgment, this appeal was taken. The issue is whether the circuit court erred in setting aside a decision of the Commission on issues of fact; whether the Commission was warranted in inferring that decedent, a member of a sales crew, was permitted to rely on his supervisor's apparent authority in accompanying him on a trip to New York; whether deceased was in the course of his employment when he suffered fatal injuries returning a vehicle to Chicago from Hackensack, New Jersey, at the request and direction of the employer.

Homemakers' Library League, the respondent, is in the business of selling subscriptions for magazines, having 26 offices across the country. It advertises a list of 38 magazines for which it sold subscriptions. It uses various techniques to procure subscriptions, including direct mail and telephone solicitation, but the principal method, used by its Chicago office, is house-to-house canvassing. The Chicago office was located at 185 North Wabash Avenue and was under the supervision of James Howe, a branch manager. It had an office girl, a collection manager, and a verifier. These people were directly responsible to Richard Brown, vice-president of the corporation. In addition, there were crew leaders, or sales organizers, and sales representatives or agents who work on the outside doing the canvassing. The number of sales representatives was indefinite, and their number varied from day to day and could range from 20 to 40 persons. The respondent furnished the sales representatives with subscription forms and advertising materials. The sales representatives were divided into crews which were assigned to a crew leader.

One Pat Maki was one of the crew leaders working for the respondent's Chicago office. On February 7, 1964, respondent leased a 1964 Chevrolet Sport Coupe from a leasing corporation in Oak Park, Illinois, which lease was signed by the Chicago branch manager, Howe. In this lease, he designated Maki as the person authorized to drive the vehicle. The decedent, Ambos, was assigned to Maki's crew, which worked in the city of Chicago, its suburbs, and also in and around Racine, Wisconsin. Maki's crew met at Ambos's apartment on several occasions, when Mrs. Ambos was present. On Sunday, April 5, 1964, Maki, Mr. and Mrs. Ambos, David Rosnick, and Randolph Scott, drove to New York in the rented automobile, arriving in New York about 4:00 P.M. on Monday, April 6. When the group arrived in New York, Maki informed the deceased

that he (Ambos) was in charge of the car and instructed him to meet Maki at noon the following day at Grand Central Station, and if Maki was not there, that Ambos and the others were to take the car and return it to Chicago. The following day Ambos went to Grand Central Station at the appointed time, but Maki was not there, and thereupon Ambos and the other members of the party started to return to Chicago via the New Jersey Turnpike.

Near Hackensack, New Jersey, they were stopped by a police officer who inquired as to the ownership of the automobile and the identity of the person authorized to operate it. Since they did not have proper identification, the officer took them to the police station in Hackensack and at that time Ambos called the respondent's Chicago office collect and explained the situation. The Chicago office sent $35 by Western Union to the decedent and contacted the car rental agency and had the agency send written authorization to New Jersey to Carl R. Ambos, the decedent, as the person authorized to drive the automobile to Chicago. The Chicago office also sent additional funds to the decedent on the following day by telegraph. On Thursday, April 9, immediately after receiving the necessary authorization papers and additional funds, the decedent, his wife, Scott and Rosnick started back to Chicago with the automobile, and while driving on the Turnpike they became involved in an automobile accident in which Ambos and Rosnick were killed.

The circuit court concluded that the accident did not arise out of and in the course of employment of the deceased; that the trip was not a business trip; nor did the participants intend to confer any benefit upon the employer by virtue of the trip. The petitioners contend that where the employer places the employee under the direction of a supervisor, and the supervisor takes the employee on a trip apparently on the employer's business, the Commission is warranted under the doctrine of an agent's apparent au-

thority in finding that the employee fatally injured on the trip was in the scope of his employment.

It appears from the evidence and from the respondent's briefs and arguments that much emphasis is placed upon the contention that the trip to New York was not authorized by the respondent and was not for the respondent's benefit, in view of the fact that from the evidence it appears that no solicitation of any magazine subscriptions occurred while on that trip. However, the evidence is irrefutable that the deceased Ambos, in returning the car to Chicago, was acting not only under the instructions of the group supervisor, Maki, but after the car was stopped by the police in Hackensack, New Jersey, was operating under the direct instructions of the respondent as the result of telephone calls he placed to the respondent and communications he received from the respondent thereafter.

From our review of the case, it is immaterial whether respondent had a full knowledge of the trip to New York, because, when the return trip was interrupted, the respondent had a full and complete opportunity to revoke the possession and use of the automobile, if in fact the use of it was unwarranted. Under its lease agreement, respondent was obligated to return the car to Chicago and could not return the car to the lessor at some other point. Its express action placed the automobile in charge of the deceased and directed that he return it to Chicago. We find that this case falls within the rule that where an employer directs and instructs an employee to render a particular service for the employer's benefit, an injury sustained by the employee in rendering such service arises out of and in the course of the employment. In the case of *Irwin-Neisler & Co.* v. *Industrial Com.*, 346 Ill. 89, an employee who worked in Decatur, Illinois, but who was injured while returning from a vacation in LaPorte, Indiana, was held to be in the course of his employment, where it appeared he stopped en route

at LaFayette, Indiana, at the direction of his employer to visit certain customers who were located there. Likewise, in *Kennedy-Van Saun Manufacturing and Engineering Corp.* v. *Industrial Com.*, 355 Ill. 519, an engineer who worked at Michigan City, Indiana, and who asked to be absent from work on December 26 and 27 to go to Noblesville, Indiana, but was to "check up on as many calls as possible" near Peru, Logansport, and Indianapolis, Indiana, was held to be in the course of his employment when he was killed en route to Peru, Indiana. In *Olson Drilling Co.* v. *Industrial Com.*, 386 Ill. 402, an employee was injured while driving from his place of employment after working hours to his home, when at the time of the accident he was carrying drilling reports as directed by the employer to be delivered to the company office which was along the route. In that case we held that the injury occurred in the course of the employment and arose out of it. In *Sanborn Co.* v. *Industrial Com.*, 405 Ill. 50, an employee sustained injury while traveling from her home to her place of employment on a Saturday morning, usually a day off, the employer having instructed her to report to work that day and to take a stamp meter machine to the post office for refilling. We held that the injury was compensable.

It was error for the circuit court to substitute its opinion for that of the Commission on the questions of the credibility of the witnesses, the weight and preponderance of the evidence, and the reasonable inferences which could be drawn therefrom. (*Beck* v. *Industrial Com.*, 32 Ill.2d 148; *Cook County* v. *Industrial Com.*, 32 Ill.2d 181.) As we stated in *Clifford-Jacobs Forging Co.* v. *Industrial Com.*, 19 Ill.2d 236, page 245, "This court will not weigh conflicting evidence and substitute its judgment for that of the commission. Our function is to determine whether the finding of the commission is clearly against the manifest weight of the evidence. This court will not discard permis-

sible inferences drawn by the commission merely because it might have drawn other inferences from the facts." It is clear from the evidence that Ambos was instructed by Maki to return the vehicle to Chicago. Respondent reaffirmed the instruction when Ambos was detained in Hackensack, New Jersey. Respondent sent, or caused to be sent, the telegrams, money orders, and the authorization papers to Ambos, and directed him to bring the vehicle back to Chicago. He was killed while discharging these instructions and therefore his death is compensable.

The judgment of the circuit court of Cook County is reversed and the award of the Commission is reinstated.

*Judgment reversed;*
*award reinstated.*