(No. 42005.—

Frank Richards, d/b/a Richards' Tank Truck Service, *et al.,* Appellants, *vs.* The Industrial Commission *et al.*—(Mary Lou Smith, *et al.,* Appellees.)

*Opinion filed Nov. 26, 1969.—Rehearing denied Jan. 26, 1970.*

Keefe and DePauli, of East St. Louis, for appellants.

Hanagan & Dousman, of Mt. Vernon, for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

An arbitrator for the Industrial Commission found that the death of James S. Smith was due to an accident which arose out of and in the course of his employment, and awarded benefits to his widow and minor child. This award was affirmed by the Industrial Commission and the circuit court of Marion County. The employer appeals, contending that the accidental injury and resulting death did not arise out of and in the course of Smith's employment.

The employer, Frank Richards, d/b/a Richards' Tank Truck Service, was engaged in the business of cleaning oil storage tanks for oil well owners. On March 18, 1967, he received an order to clean a tank at an oil lease which was located on farmland and consisted of two wells and two sets

of storage tanks. Smith, who drove the truck and operated the equipment, and a helper, George Russell, were directed to perform this task by pumping the bottom sedimentation from a specified tank into a second designated tank. The two men went to the site, and completed the pumping operation.

It was the helper's duty to do the cleanup work. As Russell began cleaning the hose and wiping the rake and the wrenches that had become oily and dirty, Smith said that he was going over to the well and pumping unit which was about 200 feet from the storage tanks. A short time later, as Russell was working between the storage tanks and the truck, cleaning the equipment, he heard a scream. When he went around the truck and looked toward the pumping unit he saw Smith's body on the ground. Smith's skull had apparently been crushed by one of the counterweights which form part of the pumping unit, and move in a counterclockwise course on either side of the framework. There was testimony on behalf of the employer that there was no occasion or need to go to the pumping unit in order to complete the job of pumping out the sedimentation from the storage tank, and that no part of the work assigned to Smith and Russell was to be done at the well and pumping unit.

Other testimony established, however, that a few days before the accident an employee of the company which owned the oil lease had replaced the radiator on the motor that runs the pumping unit. He put the old radiator in the box in which the new one had been packed, and then left the box between the two metal frames of the pumping unit.

In retrospect, with full knowledge of what the box contained, and how it came to be where it was, it is easy to say that it did not concern Smith or his employer. But Smith did not have that knowledge and his testimony, which could have established his purpose in going to the box, is unavailable. It is clear that the continued success of the business of Smith's employer depended, in part at least, upon the continued operation of the pumping equipment at the oil well

and that his employer's business would be jeopardized by anything that would interfere with its continued operation. Whether, as the claimants suggest, Smith went to the well to see whether the box or its contents threatened the operation of the pumping equipment, or because he thought the box might be a suitable container for dirty tools and equipment so that they might be kept separate from the other tools with which he and his helper were equipped, is immaterial. It was unnecessary for the Commission to make an explicit selection among the possible inferences that might explain Smith's short walk to the box, which had been left in a most unusual place. That such reasonable inferences exist is sufficient, in our opinion, to negative the conclusion that Smith's short walk to the pumping unit amounted to a departure from his employment. See 1 Larson, Workmen's Compensation, sec. 10.32.

In dealing with a similar issue, this court has said: "Whether or not the injury arises out of and in the course of the employment is a question of fact to be determined by the Industrial Commission from reasonable inferences and conclusions drawn from the evidence presented. * * * An employee is engaged in the course of his employment when the injury occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or is engaged in doing something incidental to it. * * * A risk may be incidental to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected therewith. * * * Where the inferences drawn by the Industrial Commission are clear and reasonable, this court will follow the action of the Industrial Commission and will not discard permissible inferences drawn by the commission merely because other inferences might have been drawn from such facts." *Hunter Packing Co. v. Industrial Com.,* 1 Ill.2d 99, 104, 107.

In the present case we cannot say that the Commission's findings were against the manifest weight of the evidence, and the circuit court correctly refused to substitute its judgment for that of the Commission.

In this court the claimants contend they are entitled to interest from the date of the arbitrator's award. They rely upon section 3 of the Interest Act which provides that judgments shall draw interest at the rate of 5% and that "When judgment is entered upon any award, report or verdict, interest shall be computed at the rate aforesaid, from the time when made or rendered to the time of rendering judgment upon the same, and made a part of the judgment * * *." (Ill. Rev. Stat. 1967, ch. 74, par. 3.) In support of their contention, they also cite the decisions of this court in *McMurray* v. *Peabody Coal Co.*, 281 Ill. 218, *Chicago and Interurban Traction Co.* v. *Industrial Board*, 282 Ill. 230, and *Big Muddy Coal and Iron Co.* v. *Industrial Com.*, 289 Ill. 515. In opposition the employer cites what was said in *Board of Education of Chicago* v. *Industrial Com.*, 39 Ill.2d 167, 171, and the claimants respond by pointing out that the cases relied upon in our *Board of Education* opinion did not involve claims of interest.

The claim for interest which is now advanced was not brought to the attention of the trial court, and we agree with the employer that it may not properly be raised for the first time in this court. (*Woman's Athletic Club of Chicago* v. *Hulman*, 31 Ill.2d 449, 454; *O'Brien* v. *Rautenbush*, 10 Ill.2d 167.) We therefore express no opinion concerning it.

The judgment of the circuit court of Marion County is affirmed.

*Judgment affirmed.*