(No. 47379

FRANCES N. WARREN, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Fields, Goldman & Magee, Inc., Appellee.)

*Opinion filed September 26, 1975.*

Hanagan & Dousman, of Mt. Vernon, for appellant.

Keefe & De Pauli, of East St. Louis, for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

This is a direct appeal under our Rule 302(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 302(a)) by the petitioner, Frances N. Warren, from a judgment of the circuit court of Jefferson County which affirmed the Industrial Commission's denial of her claim under the Workmen's Compensation Act. Ill. Rev. Stat. 1971, ch. 48, par. 138.1 *et seq.*

The petitioner is the widow of Carl Warren, who died from injuries received in an automobile-train collision on the night of January 16, 1973. Warren was employed as a draftsman by the respondent, the architectural firm of Field, Goldman & Magee, Inc., which is located in Mt. Vernon. Warren's usual duties consisted of reducing architectural designs into detailed two-dimensional drawings and plans. Warren served as a "job captain" and had the additional duty of organizing complete sets of drawings and assigning various work to draftsmen under his direction. His normal work week was 40 hours, for which he was paid an hourly rate, and he was paid time and one-half for all time in excess of 40 hours. Hourly employees were not paid for time spent going to or returning from work, nor were they paid mileage for the use of their automobiles except when their work required a trip to a construction site. Under the employer's policy employees could decline to work overtime. During the 7 months preceding his death, Warren had worked 249 hours overtime. He had not performed any overtime work in the 6-week period preceding his death.

On January 16, 1973, Warren and several other draftsmen were requested to work overtime in order to

assemble a presentation model for a building project. A presentation model is a three-dimensional, scale duplicate of a proposed building. Pieces of cardboard and balsa wood must be cut to precise measurements and then assembled on a plywood base. Normally, members of the respondent's design department did this work, but on this occasion, a too rapidly approaching deadline made it necessary to assign draftsmen to construct the model. Warren had no prior experience in this work.

At 5 p.m. Warren left the office and went to his home in Mt. Vernon. He returned to the office at about 6 p.m. He worked there until about 11 p.m. and was driving on a direct route to his home when his pickup truck collided with a Southern Railway train traveling 20 miles per hour. There was testimony at the hearing before the arbitrator that the train's headlight, bell and whistle, and the red flasher lights at the intersection were operating at the time of the collision. The weather was clear and cold, the pavement was dry, and there were no apparent obstructions to visibility at the intersection. The train's engineer testified that the truck was driven directly into the train without any apparent attempt made by Warren to reduce speed.

The petitioner testified that her husband's bedtime had been 10:20 p.m. Richard Marlow, a fellow employee of Warren, who had also worked on the model that night, testified that he was "pretty tired" when he left for home at 11 p.m. There was testimony by Marlow and later by a vice-president of the employer regarding the mental effort required for the normal work of a draftsman as compared with the effort involved in the assembly of a model. Marlow testified that the work of constructing a model was more fatiguing than his work as a draftsman. George Magee, the vice-president of Fields, Goldman & Magee, Inc., however, compared the two functions and testified that Warren's work on the model should have been less strenuous than his service as a job captain. There was no

evidence presented as to Warren's physical or mental condition at the time he left the office that night.

The arbitrator denied the petitioner's claim, finding that her husband's fatal injuries had not arisen out of and in the course of his employment. The Industrial Commission confirmed the arbitrator's decision, and the circuit court affirmed the finding of the Commission.

The petitioner urges that the only reasonable inference which can be drawn from the record is that Warren suffered from a failure of mental alertness, which was a contributing cause of the fatal collision. She says that this was caused in whole or part by his unusually demanding overtime work.

An injury must "arise out of" and "in the course of" employment to be compensable under the Workmen's Compensation Act. (*Technical Tape Corp. v. Industrial Com.*, 58 Ill.2d 226, 230; *Union Starch v. Industrial Com.*, 56 Ill.2d 272, 275.) To "arise out of" employment an injury must have had its origin in some risk connected with, or that is incidental to, the employment so that there is a causal connection between the employment and the injury. *Technical Tape Corp. v. Industrial Com.*, 58 Ill.2d 226, 230; *Material Service Corp. v. Industrial Com.*, 53 Ill.2d 429, 433.

Whether an injury arises out of and in the course of employment is a question of fact to be determined by the Industrial Commission, which is to make reasonable inferences and draw conclusions from the evidence presented. Where inferences drawn by the Commission can be said to be reasonable, this court will not discard permissible inferences drawn by the Commission merely because other inferences might have been drawn from the evidence. (*Richards v. Industrial Com.*, 44 Ill.2d 150, 153.) A court will not disturb a finding of the Commission unless the finding is contrary to the manifest weight of the evidence. *Martinez v. Industrial Com.*, 59 Ill.2d 258, 260.

Considering the record here, we cannot say that the

finding of the Industrial Commission was contrary to the manifest weight of the evidence.

The petitioner contends, too, that Warren's death should be held compensable on the ground that the fatal injuries occurred while he was engaged on a "special errand" for his employer.

Ordinarily injuries sustained by an employee while traveling to or from the employer's place of business are held not to have arisen out of and in the course of employment under the Workmen's Compensation Act. (*Thomas Reed & Son v. Industrial Com.*, 36 Ill.2d 612, 615; *Maxim's of Illinois, Inc., v. Industrial Com.*, 35 Ill.2d 601, 603.) There are exceptions to this ordinarily applied rule, such as in a case where the trip or travel was made necessary by special requirements of the employment. (*U.S. Industries v. Industrial Com.*, 40 Ill.2d 469, 474; *Urban v. Industrial Com.*, 34 Ill.2d 159, 161; *Benjamin H. Sanborn Co. v. Industrial Com.*, 405 Ill. 50, 54. See also 1 A. Larson, The Law of Workmen's Compensation, secs. 16.10-16.12.) Here, Warren's employment did not require any special trip or travel by him beyond the ordinary and noncompensable travel to and from his place of employment.

For the reasons given, the judgment of the circuit court is affirmed.

*Judgment affirmed.*