(No. 52781.-)

INTERNATIONAL ART STUDIOS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Tai-Sun Hyun, Appellee).

*Opinion filed October 17, 1980.—Rehearing denied November 26, 1980.*

Wiedner & McAuliffe, of Chicago (John P. McAuliffe and Richard J. Leamy, Jr., of counsel), for appellant.

Scott H. Reynolds, of Hoellen, Lukes, Halper & Abramson, of Chicago, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

This is a case under the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*) in which the only disputed issue is whether respondent's employee, Sang-Kook Hyun, received his fatal injuries arising out of and in the course of his employment. The arbitrator, the Commission and the circuit court of Cook County agreed that his injuries were so sustained, and an appropriate award for the maintenance of his widow and two children was entered. Respondent International Art Studios has appealed. See 73 Ill. 2d R. 302(a).

Respondent had agreed to produce a mail order catalogue for Merchandise Association, Inc. (hereafter MAI), and had planned to complete and ship this catalogue on April 2, 1976. Decedent pasted photographs on layout pages and made corrections on catalogue negatives. These were the last operations required before the catalogues could be completed. His death delayed their shipment.

The parties stipulated that decedent normally worked 40 hours each week on weekdays between 9 a.m. and 5:30 p.m. His wages were $4 per hour. On April 2, however, eight employees, including the decedent, were working overtime on the job for MAI. The decedent called his brother, according to his testimony before the arbitrator, at approximately 10:30 p.m. on April 2 to say he would not be visiting him because the MAI job had to be finished. Decedent mentioned that he was looking for someone to

pick up his wife, who worked as a nurse at Presbyterian St. Luke's hospital until 11:30 p.m. each day. Decedent's widow testified that he customarily gave her a ride home from work.

Hayashi, respondent's supervisor that evening, also testified before the arbitrator. He said that sometime between 9:30 and 10:30 p.m. he thought the decedent was leaving and asked him his destination. Decedent, according to Hayashi, expressed concern for his wife's safety and said he wanted to pick her up from work, but that he would return. Respondent's supervisor agreed that decedent's concern for the safety of his wife was legitimate and approved this trip conditioned upon his agreement to return to work. Respondent's employees customarily keep a record on a time sheet of the hours they work. When decedent left, he did not sign out on this sheet. Hayashi did not ask or direct him to sign out.

Laurence, another employee of respondent, pre-pared an accident report. Paragraph R of that report con-tained this question and answer: "What was employee per-forming when illness or injury occurred[?] Returning to work after driving wife home from her employment as nurse at St. Lukes—Presbyterian [*sic*] hospital as direct-ed." Hayashi had provided the information for this portion of the report, and he agreed that this statement was correct.

Decedent's widow testified that her husband picked her up at the hospital around 11:30 p.m. on April 2. Decedent dropped her off at home, told her he was return-ing to work and then drove away. He was killed on Lake Shore Drive, apparently when an oncoming car crossed the center line and caused a collision. Decedent's job normally was performed on respondent's premises. He was driving his own car when he was killed.

Similar principles govern the compensability of off-premises injuries occurring during lunch breaks, while

traveling to and from a recreational event connected with employment, or while traveling to and from the normal place of work (see 1 and 1A A. Larson, Workmen's Compensation secs. 15.00, 15.50, 16.00, 22.23 (1978)). In these situations, injuries occurring in transit generally do not arise out of and in the course of employment and are therefore rendered noncompensable under the Act. (Ill. Rev. Stat. 1975, ch. 48, par. 138.2; *Hess v. Industrial Com.* (1980), 79 Ill. 2d 240, 241-42; *Sjostrom v. Sproule* (1965), 33 Ill. 2d 40, 43; see generally 1 A. Larson, Workmen's Compensation sec. 15 (1978).) But "injuries sustained by an employee while away from the job premises of his employer have been held compensable under the Act when the injuries occurred while the employee was acting under the direction of the employer or for his benefit or accommodation." *Osborn v. Industrial Com.* (1971), 50 Ill. 2d 150, 151; see also *Lynch Special Services v. Industrial Com.* (1979), 76 Ill. 2d 81, 91-92; *Givenrod-Lipe, Inc. v. Industrial Com.* (1978), 71 Ill. 2d 440, 444; *Mid Central Tool Co. v. Industrial Com.* (1978), 72 Ill. 2d 569, 578; *Torbeck v. Industrial Com.* (1971), 49 Ill. 2d 515, 516-17; 1 A. Larson, Workmen's Compensation sec. 16 (1978).

In this case the specific exception obviously applies. Decedent could not know how late he would have to work. The Commission could reasonably infer that he had planned to visit his brother and to take his wife home from work as was his custom. Decedent had not foreseen but nevertheless accommodated respondent's request for overtime work on the MAI catalogue. (See *Torbeck v. Industrial Com.* (1971), 49 Ill. 2d 515, 516-17; *Lynch Special Services v. Industrial Com.* (1979), 76 Ill. 2d 81, 91-92.) Respondent never deducted the travel time from decedent's time sheet and never gave him the option to complete his duties on the MAI project the next day. Respondent's own report acknowledged that decedent's

travel was subject to its control and direction.

It was also the province of the Commission to resolve any ambiguities in the evidence surrounding the time decedent left respondent's premises and his destination when he was killed. From the evidence on this record, it is apparent they drew eminently reasonable inferences, including the inference that decedent was killed while returning to work late at night to accommodate the unforeseeable demands of respondent made necessary by its deadline on the MAI project. The risk of that travel, not common to the general public, was occasioned by the demands of respondent and for its benefit and is, accordingly, compensable.

Respondent cites *Public Service Co. v. Industrial Com.* (1946), 395 Ill. 238, *Checker Taxi Cab Co. v. Industrial Com.* (1970), 45 Ill. 2d 4, and *Warren v. Industrial Com.* (1975), 61 Ill. 2d 373, as similar cases in which compensation was denied. In neither of the first two cases, however, was the employee subject to employer control or direction when the injuries took place. Nor did the employee travel in those cases in any way accommodate or benefit the employer. Compensation in those cases was accordingly denied.

In the latter case the Industrial Commission found insufficient evidence to support allegations that overtime work caused employee fatigue which, in turn, caused a fatal automobile collision. This court held that this finding was not against the manifest weight of the evidence and noted that the employment did not require a special employee trip home. 61 Ill. 2d 373, 376-77.

*Warren* in fact supports affirming this award because the court explicitly recognized that employee off-premises injuries were compensable "where the trip or travel was made necessary by special requirements of the employment." (61 Ill. 2d 373, 377.) Cited for that proposition, in addition to three cases, were sections 16.10 through

16.12 of Professor Larson's treatise on workmen's compensation law (1 A. Larson, Workmen's Compensation secs. 16.10 through 16.12 (1978)). These sections of the treatise support the result we reach here.

Accordingly, the judgment of the circuit court is affirmed.

*Judgment affirmed.*