**In the Matter of the Worker's Compensation of Nancy RICHARD, surviving spouse of Barry P. Richard, Appellant (Employee–Claimant),**

v.

**STATE of Wyoming, ex rel. WYOMING WORKER'S COMPENSATION DIVISION, Appellee (Objector–Defendant).**

No. 91–128.

Supreme Court of Wyoming.

May 15, 1992.

Stephen J. Jouard, Fort Collins, Colo., for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., and J.C. DeMers, Sr. Asst. Atty. Gen., for appellee.

Before URBIGKIT, C.J., THOMAS, CARDINE and MACY, JJ., and LEHMAN, District Judge.

CARDINE, Justice.

The worker's compensation hearing officer, finding the death of appellant's husband occurred within the course and scope of his employment, entered an order awarding worker's compensation death benefits. The district court, on appeal, reversed the order awarding benefits. Appellant Nancy Richard, wife of the deceased worker Barry Richard, appeals to this court seeking reversal of the district court order and reinstating the order of award of the hearing officer.

We reverse the district court's order and direct reinstatement of the hearing officer's award of benefits.

Mrs. Richard advances these issues:

(1) Whether the District Court erred in holding that Barry Richard was not in the course and scope of his employment with Log–Rite Well Logging, Inc. at the time of his fatal accident on April 1, 1990.

(2) Whether the District Court erred in holding that the provisions of W.S. § 27–14–102(a)(xi)(D) bar the compensability of Mrs. Richard's claim.

The Workers' Compensation Division opposes Mrs. Richard's claim and queries:

Was the employee's death a compensable injury under W.S. § 27–14–102[ (a) ](xi), when his fatal accident occurred while traveling to his employment in his own vehicle, without engagement in a business purpose or reimbursement for travel expenses?

Barry Richard died when his pickup truck inexplicably ran off the road while he was returning to an oil well drilling site in a remote area of Sweetwater County. The

employer, Log–Rite Well Logging, Inc., and the Division contested the claim, asserting Richard was not within the course and scope of his employment at the time of his accident.

Richard was employed by Log–Rite as a mud logger at an isolated well site about 40 miles from Baggs, Wyoming. He was the unit manager. It was anticipated that he would work at the well site seven days a week for a period of about two months. His duties included communication between the well site and Union Pacific Resources headquarters in Fort Worth, Texas, and to address whatever problems might arise at the well site or with the drilling log. He was essentially on call 24 hours a day. There was a telephone and a radio telephone at the site, but neither were fully satisfactory as a means of communication. It was often difficult to understand what one heard over the phone. The radio telephone was not secure (anyone and everyone in the vicinity could hear the transmission) and it could not be used to transmit information of a confidential nature to Union Pacific Resources.

Richard left the well site at about 12:30 P.M. on Sunday, April 1, 1990, after he had completed a 12–hour work shift on the tower. No witness knew why Richard went to Baggs that day nor could they eliminate as a possibility a work-related purpose for the trip. The purpose of the trip went to the grave with Richard. In addition to these facts, we know Richard phoned his wife just prior to leaving Baggs that day, and that he died in a one-vehicle accident one mile from the well site at about 6:30 P.M. as he was returning. We also know from the testimony of Richard's wife and his supervisor that Richard was dissatisfied with the operation at this particular well site and that he had called his supervisor from Baggs on March 28, 1990, to discuss with him some changes in the operation's format.

Applying the law to these facts, we begin our discussion with a careful examination of W.S. 27–14–102(a)(xi) (June 1987 Repl.) which provides in part:

(xi) *"Injury"* means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, *arising out of and in the course of employment while at work* in *or about the premises occupied, used or controlled* by the employer *and incurred while at work in places where the employer's business requires an employee's presence* and which subjects the employee to extrahazardous duties incident to the business. *"Injury" does not include:*

\*　　\*　　\*　　\*　　\*　　\*

(C) Injury due solely to the culpable negligence of the injured employee;

(D) Any injury sustained during travel to and from employment unless the employee is reimbursed for travel expenses or is transported by a vehicle of the employer;

\*　　\*　　\*　　\*　　\*　　\*

(F) Any injury or condition preexisting at the time of employment with the employer against whom a claim is made. [emphasis added]

■ In addition to applying this statute, we will adopt a rule which we hold governs in this case. That rule is explained by Professor Larson as follows:

When an employee is found dead under circumstances indicating that death took place within the time and space limits of the employment, in the absence of any evidence of what caused the death, most courts will indulge a presumption or inference that the death arose out of the employment.

The theoretical justification is similar to that for unexplained falls and other neutral harms: The occurrence of the death within the course of employment at least indicates that the employment brought deceased within range of the harm, and the cause of harm, being unknown, is neutral and not personal. The practical justification lies in the realization that, when the death itself has removed the only possible witness who could prove causal connection, fairness to the dependents suggests some softening

of the rule requiring claimant to provide affirmative proof of each requisite element of compensability.

1 A. Larson, *Law of Workmen's Compensation*, § 10.32 (1990) (footnote omitted).

■ When there is some doubt about whether the death occurred within the course and scope of employment, the rule has been applied to situations in which employees have been found dead in slightly improbable locations, so long as there is some reasonable explanation. *Id.*, § 10.-32(c), p. 3–140. Thus, Larson states:

> If the employee, in the course of employment, engages in an utterly perplexing act for which no personal or employment motive can be deciphered, the neutral-risk principle should control and the employment connection supplied by the presence of the act within the course of employment should tip the scale in favor of compensability.

*Id.*, § 10.32(c), p. 3–142.

■ Where an employee has no fixed place or time of work, the unexplained-death assumptions apply as long as there is some evidence the employee continued in his course of employment. *Id.*, § 10.32(c), pp. 3–144 to 3–148; *and see Downes v. Industrial Comm'n*, 113 Ariz. 90, 546 P.2d 826 (1976); *Richards v. Industrial Comm'n*, 44 Ill.2d 150, 254 N.E.2d 500 (1969). These inferences are subject to rebuttal.

■ Our task in this case is to ascertain whether, in light of the governing statute and the unexplained-death rule described above, there is substantial evidence to sustain the hearing officer's finding that Richard was within the course and scope of his employment at the time of his death, thus justifying an award of death benefits to Richard's dependents. *Hohnholt v. Basin Electric Power Co-op*, 784 P.2d 233, 234–35 (Wyo.1989).

We visited this issue, albeit only tangentially, in *Matter of Injury to Corean*, 723 P.2d 58 (Wyo.1986). In that case, we rejected a contention that the compensation award should be solely predicated on the fact that the employee was on the employer's premises at the time of injury. We held also the disputed travel was not governed by principles applicable to an employee traveling to and from work, but rather upon whether the employee was acting within the course and scope of employment. We concluded the employee was benefiting his employer at the time of his motor vehicle accident and ordered an award of benefits. Similarly, in *Rocky Mountain Tank & Steel Co. v. Rager*, 423 P.2d 645, 647–48 (Wyo.1967), we declined to apply a premises rule but held instead that a night watchman was entitled to benefits because he was *on duty* (working) at the time of his death.

We now apply these principles to the facts at hand. In this case there was no evidence that Richard should be denied an award of benefits because he was traveling solely for personal purposes as contemplated by W.S. 27–14–102(a)(xi)(D). Richard may have traveled to Baggs intending to call his employer, or attempted unsuccessfully to call, or done other things that would benefit his employer. No one will ever know. Applying the unexplained-death rule, we must, under the peculiar facts of this case, presume he was traveling, at least in significant part, within the course and scope of his employment. The fact that Richard did avail himself of the opportunity to call his wife while in Baggs does not deprive the trip of all vestiges of employment activity.

We conclude the evidence offered by the Workers' Compensation Division simply cannot rebut the presumption of a work-related cause for Richard's death. Indeed, most of the evidence offered by the Division served to bolster that presumption. Richard worked a seven-day week. He was essentially on call 24 hours a day. The phone arrangement at this remote well site was not the best. It is reasonable to expect Richard might travel to Baggs for business-related reasons, whether it was Sunday or some other day of the week. There is substantial evidence to support the findings of the hearing officer.

The order of the district court disallowing the death benefits award is reversed

and vacated. The case is remanded to the district court with instructions that it enter an order affirming the hearing officer's award of benefits.

THOMAS, J., dissents (opinion to be filed at a later date).

MACY, J., files a dissenting opinion.

MACY, Justice, dissenting.

I respectfully dissent. I do not disagree with this court's adoption of Professor Larson's rule. My disagreement is with applying that rule to the facts of this case to arrive at the presumption that Richard's death arose out of and in the course of his employment.

My understanding of the facts is that, on the date of his death, Richard completed a twelve-hour work shift, left the work site, traveled forty miles to Baggs, telephoned his wife, and died in a one-vehicle accident as he was returning to the place of his employment. In this case, we know the cause of death and that the death took place off the work site at a time after Richard completed his twelve-hour work shift on the tower. I am unable to indulge in a presumption or inference that Richard's death arose out of and in the course of his employment. The physical facts are to the contrary.

The presumption is that Richard was not acting in the course of his employment and was merely traveling to the place of his employment in his personal vehicle. A compensable injury under the Worker's Compensation Act does not include an injury sustained during travel to or from employment unless the employee is reimbursed for his travel expenses or is transported by the employer's vehicle. Wyo. Stat. § 27–14–102(a)(xi)(D) (1991). No evidence exists indicating that Richard was being reimbursed for the personal use of his vehicle in the course of his employment.