ARMANDO MARTINEZ, Appellant and Cross-Appellee, v. THE INDUS-
TRIAL COMMISSION *et al.* (Illini Community Hospital, Appellee and
Cross-Appellant).

Fourth District (Industrial Commission Division)   No. 4—92—0242WC

Opinion filed March 18, 1993.—Rehearing denied May 4, 1993.

Mark Glass, of Carr, Korein, Tillery, Kunin, Montroy, Glass & Bogard, of East St. Louis (Michael B. Marker, of counsel), for appellant.

Evans & Dixon, of St. Louis, Missouri (Robert N. Hendershot II, of counsel), for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant Dr. Armando Martinez appeals from an order of the circuit court of Pike County reversing an award for permanent total disability granted to claimant by the Illinois Industrial Commission (Commission) and reinstating the arbitrator's decision denying an award. Respondent Illini Community Hospital, alleged to be the employer in this case, cross-appeals, challenging that portion of the circuit court's order deciding that the Commission's findings that claimant was an employee of respondent was not against the manifest weight of the evidence.

In this appeal, the court is asked to determine whether the decision of the Commission was against the manifest weight of the evidence because (a) claimant was not an employee of respondent, or (b) the accidental injury did not arise out of and in the course of claimant's employment for respondent generally or under the theory that claimant was on a special mission for respondent. We affirm the order of the circuit court based solely on the determination that the accidental injury did not arise out of and in the course of the claimant's employment and do not address the issue of whether claimant was an employee of respondent.

■ Taken with the case is a motion by claimant to strike that portion of respondent cross-appellant's reply brief because it improperly addressed an issue raised in the original appeal in violation of Supreme Court Rule 343(b)(i) (134 Ill. 2d R. 343(b)(i)). No objections to this motion having been filed, and a simple review of pages 3 to 7 of the cross-appellant's reply brief demonstrating the correctness of the

motion to strike, claimant's motion to strike point II of respondent cross-appellant's reply brief is granted.

It is undisputed that claimant, a physician, was injured in an automobile accident on October 18, 1980, while traveling to work at respondent's emergency room (ER). Claimant sustained a head injury. Claimant lived in St. Louis. Respondent's hospital is located in Pittsfield, Illinois. This was not claimant's assigned day to work. Instead, claimant had agreed to substitute for another ER physician.

Dr. Alejandro Alfredo Galan testified he is a vascular surgeon practicing in St. Louis County, Missouri. He is the owner of General and Vascular Surgical Specialties of St. Louis, Inc. (GVSS), a Missouri corporation. That corporation was formed at the request of respondent to provide medical malpractice insurance to physicians working at the hospital and to facilitate billing for medicare or medicaid patients that came to the ER. The corporation was later dissolved after the relationship with respondent was discontinued in December 1980.

Galan first started working at respondent's hospital on or about March 10, 1976. At that time, his salary was $23 per hour. He and Dr. Sheikh entered into a contract with the hospital for the physicians to cover the ER on weekends from noon on Saturday to 6 a.m. on Monday. Respondent provided a room in which to sleep and food. The $23-per-hour figure was arrived at, in part, because of the distance they had to drive to get to the hospital. It took four to six hours to drive from St. Louis to Pittsfield and back. Galan estimated that $6 to $8 of the wage rate was paid for the travel time, gasoline, and use of the car. In July 1978, claimant started working on the respondent's ER weekend staff. Part of Galan's responsibility was providing in-service training for nurses and physical examinations of hospital employees, and these duties also applied to claimant. Claimant was paid directly by respondent. In January 1980, GVSS entered into a contract with respondent, but the duties of the physicians remained the same thereafter, and claimant continued to be paid directly by respondent.

Galan once requested an increase in the hourly rate of these weekend ER physicians. One of the reasons for the requested raise was the increased difficulty in getting to the hospital in the winter when the weather was bad and due to a bridge repair. The increased rate was agreed upon by respondent. As a result of the contract entered into in 1980, the hourly fee for the weekend ER physicians was $30, and that fee was paid for time spent in the ER and the hospital. The doctors were not paid for time spent traveling to and from the hospital, although that was considered in setting the rate. The doctors were not reimbursed for mileage. Each physician drove his own vehi-

cle. The weekend ER physicians reported to the ER nurse when they arrived so that the time of arrival could be noted and the doctors could get their paychecks.

John Leland Woods was the "Assistant Administrator Comptroller" for respondent from March 1979 to May 1983. He testified that respondent is a 60-bed general medical service hospital with a coronary-care unit and an ER. The weekend ER physicians filed reports showing time of arrival and departure. They were not reimbursed monies for travel, the hospital did not own or maintain the vehicles they drove to and from the hospital, there was no requirement that they live in St. Louis, there were no restrictions on where else they could work, and they did no work for respondent other than at the hospital.

The deposition of Walter Garrett Deer, respondent's administrator from September 1977 to August 1980, was submitted to the arbitrator by respondent. The medical staff "pushed for" the contract to provide ER services on the weekend. Respondent did not select the physicians who worked the ER pursuant to the contract. GVSS provided the physicians, and Galan was responsible for bringing in new ones. Galan was responsible for scheduling. Respondent did not do the scheduling. If one doctor was unable to show up, the doctors would work it out among themselves to provide coverage. Respondent was not responsible for finding a replacement. If the physician could not get to the ER, then the hospital medical staff would provide coverage. There was discussion about raising the rate of compensation and about the costs of the doctors to drive from St. Louis. It was discussed under the category of raising hourly rates, rather than paying them specifically for transportation or gasoline costs.

The arbitrator concluded that claimant was an employee of respondent and not an employee of GVSS. However, the arbitrator found that claimant failed to prove the injury arose out of and in the course of his employment. Finding that the accident did arise out of and in the course of claimant's employment, the Commission reversed and awarded claimant $282.25 per week from October 18, 1980, for life for permanent total disability. (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(f).) The circuit court reversed and reinstated the decision of the arbitrator.

Claimant has the burden of proof and the Commission judges witness credibility, determines the weight to be given the evidence, and draws reasonable inferences therefrom. (*Smith v. Industrial Comm'n* (1983), 98 Ill. 2d 20, 23, 455 N.E.2d 86, 88.) Even where the Commission has no additional evidence, the Commission is not bound to ac-

cept the arbitrator's findings, and the Commission's decision will be overturned only if it is against the manifest weight of the evidence. (*Zarley v. Industrial Comm'n* (1981), 84 Ill. 2d 380, 386, 418 N.E.2d 717, 720.) Merely because different inferences could be drawn from the conflicting evidence does not justify the reviewing court overturning the Commission's decision. (*Niles Police Department v. Industrial Comm'n* (1981), 83 Ill. 2d 528, 533-34, 416 N.E.2d 243, 245.) Whether the accident arose out of and in the course of claimant's employment with respondent is a factual determination of the Commission which will ordinarily not be overturned on appeal unless the findings are against the manifest weight. (*Domagalski v. Industrial Comm'n* (1983), 97 Ill. 2d 228, 236, 454 N.E.2d 295, 298.) However, where the essential facts are undisputed, a question of law is presented, and Commission decisions on questions of law are not binding on the courts. (*Buchino v. Industrial Comm'n* (1988), 172 Ill. App. 3d 162, 165, 526 N.E.2d 425, 426; *Stevenson Olds Sales & Service v. Industrial Comm'n* (1986), 140 Ill. App. 3d 703, 705, 489 N.E.2d 328, 330.) In this case, the essential facts necessary for a consideration of whether the accident arose out of and in the course of claimant's employment with respondent appears to be undisputed, raising a question of law.

■ As a general rule, an employee may not recover under the Act for injuries sustained while in transit between the employee's home and place of employment. Such injuries generally do not arise out of and in the course of employment. (*Stevenson Olds*, 140 Ill. App. 3d at 705, 489 N.E.2d at 330.) The rationale underlying the rule is that the employee's trip to and from work is the result of the employee's decision about where to live, which is a matter of no concern to the employer. (*Lopez v. Galeener* (1975), 34 Ill. App. 3d 815, 819, 341 N.E.2d 59, 63.) There are, however, several exceptions to the rule. Claimant's theories on appeal are that (1) his travel time was part of his service to respondent and he was paid for his travel time or (2) he was on a special mission for respondent, having agreed to work an unscheduled shift for another doctor on short notice.

The claimant admits that the Commission did not address the question of whether the accident arose out of and in the course of claimant's employment with respondent because he was paid for the time of travel, but suggests this court can nevertheless consider grounds to affirm the Commission's decision. Respondent does not suggest this question should not be considered by this court, but argues (1) the evidence used by claimant to support this argument was part of negotiations for the contract between GVSS and respondent

and is inadmissible under the parol evidence rule and (2), even in light of this evidence, it is clear that claimant is not entitled to recover under this theory.

■ The parol evidence rule does not appear to bar consideration of this evidence. Claimant is not a party to the contract between GVSS and respondent, or a party in privity to a party to the contract, and did not seek to admit the contract into evidence so as to come under its terms. Instead, it is respondent who is using the contract as a shield. Therefore, claimant may offer evidence to explain how the $30-per-hour wage in the contract was arrived at. (*Schultz v. Plankinton Bank* (1892), 141 Ill. 116, 122-23, 30 N.E. 346, 348; R. Hunter, Trial Handbook for Illinois Lawyers §73.6 (5th ed. 1983).) However, any statement by Galan that claimant was considered "on duty" when he was driving to work cannot be construed as an admission by respondent since it is not shown that Galan had authority to make such a statement that would bind respondent. See *Chmieleski v. Venture Stores, Inc.* (1982), 106 Ill. App. 3d 312, 314, 436 N.E.2d 4, 6.

■ In *Commonwealth Edison Co. v. Industrial Comm'n* (1981), 86 Ill. 2d 534, 538-39, 428 N.E.2d 165, 166-67, the Illinois Supreme Court stated the following exceptions to the general rule denying liability for injuries occurring in transit between the employee's home and place of employment:

"[W]hen the employer agrees to compensate the employee for time spent traveling to and from work.

'When the employee is paid an identifiable amount as compensation for time spent in a going or coming trip, the trip is within the course of employment. This is a clear application of the underlying principle that a journey is compensable if the making of that journey is part of the service for which the employee is compensated. \*\*\*
\* \* \*

[A] demonstration that travel time was specifically paid for is one of the most reliable ways of making a case for the compensability of a going or coming trip, and is ordinarily sufficient in itself to support such a finding \*\*\*.' (1 A. Larson, Workmen's Compensation §16.20 (1978).)
\*\*\*
\*\*\*

\*\*\* Although proof of payment for *time spent in travel* is supportive of a conclusion that the travel itself is within the course of the employment, the same is not true for reimbursement for the *expense of travel.* Crucial to the determination is

the question of whether the travel is sufficiently important in itself to be regarded as part of the service performed. In many cases, the payment of the expenses incurred in travel amounts to reimbursement for the expense of travel and is merely a form of added compensation; it does not bring the travel itself within the course of employment. (1 A. Larson, Workmen's Compensation §16.30 (1978)." (Emphasis in original.)

■ In this case, claimant was paid for time spent *in respondent's hospital.* In setting the hourly rate, respondent may have considered that claimant, and other weekend ER physicians, would be required to drive a considerable distance, at their expense, to get to and from the hospital. A reasonable inference is that this was necessary to attract physicians to work at the ER on weekends. Galan's testimony was that the amount of wages was set in relation to the distance from St. Louis and the amount of wages in ER's in St. Louis. But that is not the same as saying that the doctor was paid for the travel time. Claimant, in effect, "punched a clock" by reporting to the duty nurse on arrival. The testimony was uncontradicted that he only got paid for the time he was at the hospital.

Moreover, we agree with the circuit court that the evidence, as a matter of law, does not establish that claimant was on a special mission for respondent.

" '[I]njuries sustained by an employee while away from the job premises of his employer have been held compensable under the Act when the injuries occurred while the employee was acting under the direction of the employer or for his benefit or accommodation.' *Osborn v. Industrial Com.* (1971), 50 Ill. 2d 150, 151; see also *Lynch Special Services v. Industrial Com.* (1979), 76 Ill. 2d 81, 91-92; *Givenrod-Lipe, Inc. v. Industrial Com.* (1978), 71 Ill. 2d 440, 444; *Mid Central Tool Co. v. Industrial Com.* (1978), 72 Ill. 2d 569, 578; *Torbeck v. Industrial Com.* (1971), 49 Ill. 2d 515, 516-17; 1 A. Larson, Workmen's Compensation sec. 16 (1978)." (*International Art Studios v. Industrial Comm'n* (1980), 83 Ill. 2d 457, 460, 415 N.E.2d 1031, 1032-33.)

At the time of the accident in this case, claimant was not under the direction or control of respondent. While he agreed, on short notice, to work the ER that day, claimant did so to benefit and accommodate a fellow employee, not respondent. The respondent had no control over which doctor worked on a particular weekend. Respondent did not request claimant to work on the day in question. That control and responsibility belonged to GVSS. Claimant was not on a special mis-

sion for respondent as was true in *Benjamin H. Sanborn Co. v. Industrial Comm'n* (1950), 405 Ill. 50, 89 N.E.2d 804. As argued by respondent, claimant was traveling to the hospital at the usual time, scheduling of the doctors was the responsibility of GVSS, and there was no request by respondent that claimant do anything special on the day in question. At the time of the accident, claimant was traveling to work and his actions in so doing do not fit into any exception to the no-recovery rule suggested by claimant.

Accordingly, we affirm the order of the circuit court of Pike County reversing the award by the Commission.

Affirmed.

RAKOWSKI, WOODWARD, STOUDER, and RARICK, JJ., concur.