(No. 32127.—

GENERAL ELECTRIC COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(EARL DRULLINGER, Defendant in Error.)

*Opinion filed January 24, 1952—Rehearing denied March 17, 1952.*

BRISTOW, J., took no part.

BOOKWALTER, CARTER, GUNN & HICKMAN, of Danville, (ROBERT Z. HICKMAN, of counsel,) for plaintiff in error.

JOHN R. DEAN, of Danville, for defendant in error.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

Earl Drullinger, an employee of General Electric Company, filed with the Industrial Commission an application for compensation, charging that on March 25, 1949, a particle of some kind struck him in the left eye while he was cleaning the face of a drill press. The arbitrator denied compensation. On further hearing before the commission an award was made of compensation at the rate of $19.50 per week for 19⁶⁄₇ weeks, the period of temporary total incapacity for work. The employer was also ordered to pay the additional sum of $664.15 for medical, surgical and hospital expenses, and the further sum of $75 for the cost of an artificial eye. This decision was confirmed on *certiorari* by the circuit court of Vermilion County, and the cause is here for further review on writ of error heretofore granted by this court. It is alleged (1) that error was committed in granting an allowance for medical, surgi-

cal and hospital services; and (2) that the decision finding the disability to be a result of the accident is against the manifest weight of the evidence.

The evidence discloses that in 1925 the employee, while in the employ of another employer, had sustained an injury when a piece of steel from a cold chisel penetrated his left eye. He thereafter received compensation therefor, and at the time of the alleged accident in the present case the eye was industrially blind. On March 25, 1949, the employee was cleaning the face of a drill press when a foreign object, the nature of which he does not know, struck him in the left eye. The next day it became painful. He subsequently consulted several physicians and received medical treatment. The eye continued to trouble him, however, and on June 1, 1949, it was removed by surgery. He was thereafter supplied with an artificial eye and noticed no further discomfort.

He was examined after the supposed injury of March 25 by three eye specialists, including the surgeon who performed the enucleation. The latter testified, on the employee's behalf, that when he first examined him on May 3 the eye was inflamed; that there was an old scar on the cornea; and that the acute inflammation could have been caused either by the old condition or by the accident of March 25. Dr. S. G. Baldwin testified he examined the employee on March 29, and found him suffering from a superficial ulcer of the cornea, which may ordinarily be caused by getting dust in the eyes or brushing them with a handkerchief; that he treated him at a hospital from March 29 to April 3; and that on the latter date the ulcer was completely healed. He further testified he examined the employee again on May 7 and found he had a glaucoma of the eye; that there was a scar on the cornea, which was an old one with iris adhesions, but no ulcer of the cornea; that there was no indication of a recent foreign particle in the eye; and that the pathology which later

made removal of the eye necessary was caused by a piece of steel still embedded in the eye, probably from the injury of 1925. Dr. H. E. Baldwin, father of the specialist who testified as related, also testified as an eye specialist that he examined the employee's eye in May, and conferred with the surgeon concerning its removal; and that in his opinion the glaucoma which required its removal was not influenced by the occurrence of March 25. The employee himself testified that on April 3, when he was discharged from the hospital as having been cured of the ulcer, the eye continued to give him pain until he returned to the hospital, and that between 1925 and March 25, 1949, he had had no pain whatever in the eye and had none when he went to work that day.

The employer's contention that the removal of the eyeball was not a result of the injury and that, therefore, the judgment should be reversed cannot be sustained. We believe the record sufficiently shows a causal relationship between the accident of March 25 and the subsequent removal of the eye. It is not seriously disputed that the employee sustained an accidental injury to the eye on that date, and he testified to the effect that for the first time since the 1925 injury it then began to pain him and continued to do so until the eye was enucleated. His testimony, considered alone, would have justified the award, and some corroboration is found in the surgeon's opinion that the inflammation or glaucoma making it necessary to remove the eye could have been brought on or accelerated by the accident of March 25. It was a controverted question whether the disability was due entirely to the preexisting condition. In determining that question it was the duty of the commission to consider all the testimony and give it such weight as it was entitled to under all the circumstances. While the other two doctors testified that in their opinion the accident in question had no effect upon the glaucoma which necessitated the operation, it cannot

be said that their expert testimony must be held to conclusively overcome the testimony of the employee himself. (See *Aladdin Coal and Mining Co.* v. *Industrial Com.* 308 Ill. 35.) In view of this record we cannot say that the commission was bound to find there was no causal connection, or that the award was clearly contrary to the evidence.

Our determination of this issue leaves remaining only the question of the medical, surgical and hospital expenses. It was stipulated at the hearing before the arbitrator that the parties were subject to the Workmen's Compensation Act; that the relationship of employee and employer existed; that notice was given within the time required; that first aid, medical, surgical and hospital services had been provided by the employer; that no compensation had been paid; and that the issues were whether the employee sustained accidental injuries, the nature and extent of disability, his earnings and the number of his minor dependents. The commission, however, in addition to compensation, ordered the employer to pay the sum of $664.15 for medical, surgical and hospital expenses incurred on account of the injury, and to pay $75 for the cost of an artificial eye. Under the express terms of the stipulation these issues would, ordinarily, no longer be in the case, for a stipulation by the parties as to the facts is conclusive so long as it stands. Under such circumstances the commission would, as a rule, be without authority to make any order or award for medical, surgical, or hospital expenses. (*City of Evanston* v. *Industrial Com.* 367 Ill. 155.) But we think the difficulty here arises from a proper interpretation of the meaning of this stipulation. It is significant in this case that the employee was hospitalized twice at St. Elizabeth Hospital, once at the time of the injury and again just prior to and for the enucleation. The stipulation covered first aid, medical, surgical and hospital services following the injury and, later, the company disavowed liability for the removal of the eye on the theory it was caused by the old injury and

disclaimed all responsibility for future expenses of this nature. It would not and could not stipulate that payment had been made for·surgical fees to be incurred in the future and which the employer refused to admit were necessary as a result of the injury and for which the company denied all responsibility or liability. It is true no effort was made to set the stipulation aside. But the employee at the time of the hearing before the arbitrator had not yet received his artificial eye and the operation had only very recently been performed. There also was a change of attorneys representing the employee.. The stipulation provided: "First aid, medical, surgical and hospital services have been provided by the respondent." It does not say *all* the *necessary* expenses and services had been provided. It seems clear the parties intended to cover by the stipulation only the first aid and the medical and hospital expenses incurred to the first hospitalization and to the time the doctors in the employ of the company discharged the patient as cured. Dr. Shurtleff, who removed the eye, was selected by the employee. It is apparent from the record his bill and others have not been paid.

We conclude that the parties did not intend to include these later expenses in the stipulation, (see *Groveland Coal Mining Co.* v. *Industrial Com.* 309 Ill. 73,) and in view of our holding as to the liability as hereinabove stated it is clear the employee should be allowed the necessary medical, surgical and hospital expenses later incurred as a result of the accident.

The judgment of the circuit court of Vermilion County is correct and it is, therefore, affirmed.

*Judgment affirmed.*

Mr. JUSTICE BRISTOW took no part in the consideration or decision of this case.