(No. 46070.—

JEWEL COMPANIES, INCORPORATED, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*—(Virgil Ball, Appellant.)

*Opinion filed March 29, 1974.*

V.J. Liss and James J. Jennings, both of Chicago, for appellant.

Klohr, Braun, Lynch & Smith, of Chicago (Mark A. Braun, of counsel), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court:

The claimant, Virgil Ball, received an award under the Workmen's Compensation Act, and the circuit court of Cook County overruled the decision of the Industrial Commission. This is an appeal from that judgment.

The factual dispute is very narrow. Ball was employed by Jewel Companies, Incorporated (Jewel), as an apprentice mechanic at its Melrose Park facility. This facility encompassed several square blocks and was fenced. Due to its size, several different cafeterias and restaurants were provided so that the employees could purchase meals on the premises. There were no restrictions as to which cafeteria or restaurant any given employee or group of employees should or could use.

On the day of the accident, Ball decided to eat at a restaurant on the premises located the equivalent of several blocks away from the garage in which he worked. It was a dry day, and he started toward that restaurant on the motorcycle which he had ridden to work. While traveling to the restaurant he was involved in an accident that resulted in damage to his spleen, necessitating its removal and causing the loss of several days from work.

It is agreed that Ball sustained injuries during his lunch break while on the Jewel premises. The sole issue is whether the accident arose out of his employment. Ball is within the coverage of the Act unless he operated the motorcycle so recklessly as to negate coverage thereunder, and thereby sustained an injury which resulted from a risk personal to him, unrelated to his work, and which, thus, did not arise out of his employment.

An accident "arises out of" one's employment if its origin is in some risk connected with or incident to the employment, so that there is a causal connection between the employment and the accidental injury. *Material Service Corp. v. Industrial Com.* (1973), 53 Ill.2d 429, 433; *Chmelik v. Vana* (1964), 31 Ill.2d 272, 277.

A person is generally under 'the coverage of the Act when going to and from work on the employer's premises. (*Mt. Olive and Staunton Coal Co. v. Industrial Com.* (1934), 355 Ill. 222.) There is no evidence that Jewel had any objections to employees eating at a cafeteria or restaurant other than the one closest to the place in which

they work. In *Mt. Olive and Staunton Coal Co.*, at page 225, the court stated:

> "The determination of whether or not an injury arises out of the employment is frequently a most difficult problem. It is apparent that each case must depend upon its own facts and cannot be solved by any set rule or formula. (*Dietzen Co. v. Industrial Board,* 279 Ill. 11.) It is a general rule that the accident which caused the injury must have resulted from a risk belonging to or connected with what a workman had to do in fulfilling his contract of service, and the employer is not liable where the employee voluntarily exposed himself to a danger which was not one arising from his employment. (*United Disposal Co. v. Industrial Com.* 291 Ill. 480.) This rule is not to be extended so as to deprive an employee of the right to compensation merely because he accepts an unnecessary risk or danger. To do so would be to defeat the purpose which motivated the legislature in enacting the Workmen's Compensation law. One of the objectives of the law was to do away with the defenses of contributory negligence, assumed risk and the fellow-servant rule."

Ball did not testify to his rate of speed at the time of the accident. He made only the general statement that he never raced or jumped his motorcycle. Based on the roar of the motorcycle and his vision from the rear-view mirror of his truck, Walter A. Madsen testified that the motorcycle was going 50 to 60 miles an hour just before the accident. He also testified that after the motorcycle hit the truck, the rider was thrown against a wall.

However, in its brief, Jewel states that the accident occurred at a point about 500 yards from where Ball worked. The record is silent on the issue of whether such distance would afford adequate time for Ball to accelerate

the motorcycle to a speed of 50 to 60 miles per hour. The Jewel premises consisted of about 99 acres, and the main offices of Jewel and all its warehouses were located thereon. Merchandise was delivered to and taken from the warehouses by tractor trailers. The warehouses were about ¼ mile in length. The tractor-trailers would park next to the warehouse buildings. This would leave a roadway with a width of about 30 feet. The roadway was paved, but it had some loose gravel thereon. As Ball approached building A, the tractor-trailer that was parked there started to turn left. At this time Ball hit the brakes on his motorcycle, it started to skid and then collided with the tractor-trailer.

This court had the opportunity to consider the question of the use of dangerous modes of transportation during lunch breaks in *Roberts & Oake v. Industrial Com.* (1942), 378 Ill. 612. In that case an employee was returning from lunch off of the premises, and had returned as far as a road owned by the Union Stock Yards Company. He attempted to hitch a ride by climbing onto a moving peddler's truck, and was killed. This court, at page 616, in discussing the means of transportation attempted to be used, stated:

> "Mazurek chose a dangerous method of obtaining transportation which was not in any way identified with his employment or incidental to it. He voluntarily selected an unnecessary risk with which his employer had no connection and the risk which he chose did not arise out of his employment."

The evidence here was limited as to the cause of the accident. There was only the aforestated uncontradicted direct testimony of Madsen as to the speed of the motorcycle. This testimony was negated by Ball's general statement that he never raced or jumped his motorcycle; and his further statement that "I saw that he [the tractor-trailer which was standing on the road] started to

turn. I was too close and when I hit my brakes, that bike started to skid in the gravel on the pavement and that is it." He did not say how fast he was traveling. However, the only injuries which he received were a facial scar and an injury to the spleen which necessitated its removal. Such injuries would tend to support an inference that the speed at which the motorcycle was operated was not excessive.

The resolution of the factual question of a causal relationship is peculiarly within the province of the Commission, and a court may reverse a decision of the Industrial Commission as to a finding of fact only when the decision is against the manifest weight of the evidence. (*Wilson v. Industrial Com.* (1972), 51 Ill.2d 522, 524; *Wooldridge v. Industrial Com.* (1970), 47 Ill.2d 244, 246-247; *Orr v. Industrial Com.* (1970), 47 Ill.2d 242, 243.) There was sufficient evidence for the Commission to conclude that Ball had not been traveling at an excessive rate of speed at the time of the accident. Inasmuch as that issue was the sole point of contention in the case, it was error for the circuit court to substitute its judgment for that of the Commission. The judgment of the circuit court of Cook County is therefore reversed, and the award is confirmed.

*Judgment reversed; award confirmed.*