(No. 52357.—

C. IBER & SONS, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Harold Dean, Appellee).

*Opinion filed June 20, 1980.*

Barash & Stoerzbach, of Galesburg (Robert C. Stoerzbach, of counsel), for appellant.

Perz & McGuire, of Chicago (Frank M. Perz and James M. Ridge, of counsel), for appellee.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

An arbitrator for the Industrial Commission found that petitioner, Harold Dean, while employed by respondent, C. Iber & Sons, Inc., sustained accidental injuries arising out of and in the course of his employment and awarded him compensation for a period of temporary total incapacity, together with an additional sum for medical expenses. On review, the Industrial Commission, after receiving additional evidence, affirmed the decision of the arbitrator and, finding that the disabling condition was temporary and had not reached a permanent stage, awarded compensation for an additional period of temporary total disability. On *certiorari* the circuit court of Knox County confirmed the decision of the Industrial Commission and respondent appealed. 73 Ill. 2d R. 302(a).

Petitioner was hired by respondent to work as a laborer on a construction project at Carl Sandburg College in Galesburg. His first day of work was April 30, 1975, and on that day he rode a motorcycle to work. He parked the motorcycle near a trailer which served as a construction office but was instructed by his foreman that thereafter he was to park in a different area. The next day petitioner again rode his motorcycle to work and followed signs directing respondent's employees to the vicinity of the construction site. As petitioner was traveling very slowly his motorcycle fell to the left and he sustained a fracture of the left tibia. In dispute is whether the injury occurred on premises under the control of the employer.

Respondent's employees had access to the job area via Lake Storey Road, and there were signs and arrows which directed the way to the work site. To arrive at the work site via this route it was necessary to pass through a parking area, which was referred to as the "student" parking lot. Westward from this lot led a small road which, after a short distance, diverged into two arms so as to form a "Y."

The northernmost arm of this "Y" led to a "faculty" parking lot, and the southern arm led to the actual construction site and was the route by which material and equipment reached that site.

Petitioner testified that on his first day of work he parked all day by the trailer which served as the construction superintendent's office. He testified that he was asked by the labor foreman, Ray Hensley, to park "on the parking lot where the students park." That first day petitioner was also made aware that an ironworkers' strike was possible the next day.

Petitioner testified that the second day he followed signs and arrows "up to where we [were] supposed to park and went to pull into a parking place." As he was doing so his motorcycle slipped out from under him and he was injured. He testified that the ironworkers "had pickets up" and he was "going to go up to see if we were going to work." On cross-examination, in response to the assertion that he had actually gone beyond the last parking place in the student lot, respondent said: "No. There [are] parking places right up in there where I was going to park my motorcycle." Respondent also indicated that there were cars "all up and down" in the area where he fell. When asked what area he was in when he fell, petitioner replied: "To the best of my knowledge I was in the parking area where we were supposed to be." When asked whether there was a precise line of demarcation between the parking area and the road beyond it, as indicated in drawings offered in evidence by respondent, petitioner said: "No, there [were] cars parked and that is the reason I pulled up to park where the cars were."

Ray Hensley, the labor foreman, testified with regard to a sign in the vicinity of the southwest corner of the student lot. Several photographs which petitioner introduced into evidence portrayed the sign and the area around it. Hensley testified that one photograph which

showed the sign depicted an area where employees were permitted to park. He said employees were not "supposed" to park beyond that sign, but that "Sometimes they did." Referring to an "X" placed on a photograph next to the sign, Hensley testified that petitioner's motorcycle fell no more than "six or ten feet from this 'X' either way." Referring to a photograph, he added, "It was out of this parking lot here ***."

Respondent called Loren R. Nicol, the director of business services at Carl Sandburg College, and Richard Jewell, who at the time of the occurrence was the job superintendent for respondent. Neither witness saw petitioner fall and neither ever spoke with him as to where he should park his vehicle. Both witnesses testified that employees were not permitted to park west of the sign. Jewel indicated that the sign, which said "faculty and staff parking only," was "to stop the students from coming up this road." He also testified that on strike days employees "supposedly just turn around and go home" without checking with the foreman. Nicol testified that, pursuant to an agreement between Nicol and respondent's construction superintendent, the southernmost row of the student lot was designated as the parking area for construction workers. Another witness called by respondent saw petitioner fall and stated that the fall occurred west of the sign.

Additional evidence was adduced at the hearing before the Commission. Jewell again testified. He testified that in order to get to the work area employees who parked in the designated spaces would walk along the road where petitioner fell. Respondent also introduced into evidence a large-scale drawing of the area in question.

Petitioner testified again, saying that the day before his fall cars were parked on the west side of the sign near where he fell.

It is respondent's contention that petitioner's injury

did not arise out of or in the course of his employment for the reason that the injury occurred on a public way between the parking lot where he was authorized to park and the place of employment, and is therefore not compensable. It argues that petitioner was not subjected to any greater risk than a member of the general public who might be present on the roadway, that by parking in an area which was forbidden to him, he was removed from the scope of his employment and that the finding of the Industrial Commission was therefore contrary to the manifest weight of the evidence. Simply stated, respondent's contention is that the accident occurred after petitioner had traveled through the designated parking area and entered upon the road which provided access to the construction road and where he was specifically forbidden to go.

In *Peel v. Industrial Com.* (1977), 66 Ill. 2d 257, the court said:

"Generally speaking, an injury received on the premises of an employer by an employee going to or from his actual employment by a customary or permitted way will be deemed to have arisen out of and in the course of the employment. (*Deal v. Industrial Com.*, 65 Ill. 2d 234.) This court in *Chmelik v. Vana*, 31 Ill. 2d 272, defined the dual aspect of the requirement of the statute (Ill. Rev. Stat. 1973, ch. 48, par. 138.2) that the injury arise 'out of and in the course of the employment.' The words 'in the course of the employment' refer to the time, place and circumstances under which the accident occurred. (31 Ill. 2d 272, 278.) This court has recognized that an accidental injury which is sustained on an employer's parking lot within a reasonable time before or after work arises *in the course of* the employment. (*Aaron v. Industrial Com.*, 59 Ill. 2d 267.) It is not enough, how-

ever, that the accidental injury arise in the course of the employment. To be compensable, it must also arise out of the employment.

As this court held in *Chmelik,* the words 'arising out of' refer to the origin or cause of the accident and presuppose some causal connection between the employment and the accidental injury. It must have its origin in some risk connected with or incidental to the employment. 31 Ill. 2d 272, 277.

Not all parking-lot accidental injuries that may have been sustained in the course of the employment are compensable. A personal deviation by an employee can break the causal link with the employment. (*Aaron v. Industrial Com.,* 59 Ill. 2d 267.) Also, if the accident resulted from some risk personal to the employee and not incidental to the employment, the injury is not compensable. *Fisher Body Division, General Motors Corp. v. Industrial Com.,* 40 Ill. 2d 514." 66 Ill. 2d 257, 259-60.

In *Jewel Companies v. Industrial Com.* (1974), 57 Ill. 2d 38, the court said:

"An accident 'arises out of' one's employment if its origin is in some risk connected with or incident to the employment, so that there is a causal connection between the employment and the accidental injury. *Material Service Corp. v. Industrial Com.* (1973), 53 Ill. 2d 429, 433; *Chmelik v. Vana* (1964), 31 Ill. 2d 272, 277." 57 Ill. 2d 38, 40. Whether the employer owns the parking lot is immaterial so long as it is provided for the use of the employee. (*De Hoyos v. Industrial Com.* (1962), 26 Ill. 2d 110, 114.) Consequently, if when the accident occurred petitioner was within the area provided by respondent for employee parking, his injury would be compensable.

It is axiomatic that resolving conflicts in the evidence, drawing inferences from testimony and determining credibility of witnesses and the weight to be accorded their testimony are matters within the province of the Industrial Commission, and the Commission's finding will not be disturbed unless it is against the manifest weight of the evidence. (*Long v. Industrial Com.* (1979), 76 Ill. 2d 561; *Giganti v. Industrial Com.* (1978), 73 Ill. 2d 1.) The evidence was conflicting concerning whether the parking area provided by respondent was clearly defined and whether petitioner was within that area. It is clear that the fall occurred within a few feet of the sign which respondent contends marked the western end of the student lot. Obviously, the Commission chose to accept petitioner's version of the facts and the inference that the fall was within the permitted parking area. In view of the conflicting evidence, we hold that the decision of the Industrial Commission was not contrary to the manifest weight of the evidence.

For the reasons stated, the judgment of the circuit court of Knox County is affirmed.

*Judgment affirmed.*