(No. 53400.–)

MID-CITY ARCHITECTURAL IRON COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Katherine Goodrick, Appellee).

*Opinion filed December 1, 1980.*

Cohn, Lambert & Ryan, Ltd., of Chicago (Pamela Karoff Kesler, of counsel), for appellant.

Peter F. Ferracuti & Associates, of Ottawa (Eric B. Deobler, of counsel), for appellee.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

An arbitrator for the Industrial Commission awarded petitioner, Katherine Goodrick, workmen's compensation at the rate of $231.42 per week for life for the death of her husband, Winfield Richard Goodrick, an employee of respondent, Mid-City Architectural Iron Company. On review the Industrial Commission ordered the award modified in certain respects not relevant to this appeal and affirmed the decision. On *certiorari* the circuit court of Bureau County confirmed, and respondent appealed. 73 Ill. 2d R. 302(a).

The record shows that at approximately 7 a.m. on January 10, 1977, at the construction site of the Commonwealth Edison nuclear power plant in Brookfield Township in La Salle County, the decedent collapsed. On arrival at Community Hospital of Ottawa a short time later, he was pronounced dead. He was 65 years of age, an ironworker by trade, of moderate height and heavyset. Until approximately five or six months prior to his death, he had been employed at the same construction site by Walsh Construction Company (hereafter Walsh) on a "service" truck delivering materials in and around the jobsite. Thereafter decedent was employed by respondent in its "toolroom" or tool shed, distributing, collecting and performing minor repair work on tools. He would customarily arrive early before beginning work at 7:30 a.m. and would either prepare coffee in respondent's tool shed or converse with others in the Walsh "change shack." This structure was used by Walsh employees as a place to change into work clothes.

The testimony shows that on the morning of January 10 decedent left his home in Spring Valley at 6 a.m. and drove approximately 35 miles to the construction site. The temperature was extremely cold, snow was falling, and although there was conflicting testimony as to its direc-

tion, a brisk wind was blowing. Goodrick parked his car in a lot designated for use by employees. The parking area was approximately 2,100 feet from the tool shed where the deceased was employed. He walked 1,200 feet through several inches of blowing and drifted snow to the Walsh change shack. The shack was located directly on the path from the parking area to respondent's tool shed. The falling snow had partially blocked the door to the change shack, making it difficult to open. A laborer shoveling snow saw Goodrick walk past in the direction of the change shack and heard him fall. He was found at the base of the doorway lying on his stomach. His glasses were shattered, he was bleeding from the nose and mouth, and some dark red blood was found in his mouth. Although Goodrick was breathing when found, a witness testified that he was making a "gurgling" sound at the time.

At the hearing before the arbitrator, petitioner offered in evidence the records of Dr. Louis Paul Lukancic, the deceased's personal physician. Upon objection the offer was withdrawn. Dr. Robert Bettasso, a physician whose practice was in the field of general and thoracic surgery, in response to a hypothetical question which did not include the information contained in those medical records, testified that Goodrick had died of ventricular fibrillation and cardiac arrest. The opinion was to some extent based on Dr. Bettasso's analysis of an electrocardiogram admitted into evidence as a part of the records of the Community Hospital of Ottawa. In Dr. Bettasso's opinion, the temperature, wind, and "exertional" elements present in Goodrick's walk from the lot and entry into the change shack were all precipitating factors of an acute myocardial infarction from which he died. The hospital records also contained an emergency room outpatient report prepared by Dr. D. E. Morehead, listing as a diagnosis of Goodrick's death a "probable myocardial infarct." The evidence does not show whether an autopsy was conducted. Respondent

presented no testimony before the arbitrator.

After the hearing, respondent obtained other counsel and, over petitioner's objection, was given leave to take evidence depositions for use on review before the Industrial Commission. The evidence depositions of Dr. William Brice Buckingham and Robert Resch, project manager for respondent at the construction site, are contained in the record of proceedings on review. Resch testified that on the morning of January 10, 1977, Goodrick's duties did not require him to be in the change shack. Dr. Buckingham testified that insufficient information exists to determine the cause of Goodrick's death, and that all the circumstances, including the presence of dark red blood in Goodrick's mouth when he was found, indicate that he did not die from a myocardial infarction, but from (in decreasing order of likelihood) a bleeding esophageal varix, a duodenal ulcer, or bleeding neoplasm of the stomach and lower esophagus.

Over respondent's objection, petitioner was allowed to introduce rebuttal evidence consisting of testimony and medical records of Dr. Lukancic, who, in treating Goodrick for certain ailments, was aware of electrocardiograms taken of Goodrick in 1959 and 1960 which revealed heart disease and myocardial damage. Respondent filed a request for special findings. The Commission affirmed the arbitrator's award, with modifications, and did not make special findings as requested.

We consider first respondent's contention that the evidence fails to show that Goodrick's death resulted from an accidental injury which arose out of and in the course of his employment.

In *Jewel Companies, Inc. v. Industrial Com.* (1974), 57 Ill. 2d 38, 40, the court said:

> "An accident 'arises out of' one's employment
> if its origin is in some risk connected with or
> incident to the employment, so that there is a

causal connection between the employment and the accidental injury. *Material Service Corp. v. Industrial Com.* (1973), 53 Ill. 2d 429, 433; *Chmelik v. Vana* (1964), 31 Ill. 2d 272, 277."

In *Peel v. Industrial Com.* (1977), 66 Ill. 2d 257, 259-60, the court said:

"Generally speaking, an injury received on the premises of an employer by an employee going to or from his actual employment by a customary or permitted way will be deemed to have arisen out of and in the course of the employment. (*Deal v. Industrial Com.*, 65 Ill. 2d 234.) This court in *Chmelik v. Vana,* 31 Ill. 2d 272, defined the dual aspect of the requirement of the statute (Ill. Rev. Stat. 1973, ch. 48, par. 138.2) that the injury arise 'out of and in the course of the employment.' The words 'in the course of the employment' refer to the time, place and circumstances under which the accident occurred. (31 Ill. 2d 272, 278.) This court has recognized that an accidental injury which is sustained on an employer's parking lot within a reasonable time before or after work arises *in the course of* the employment. (*Aaron v. Industrial Com.*, 59 Ill. 2d 267.) It is not enough, however, that the accidental injury arise in the course of the employment. To be compensable, it must also arise out of the employment.

As this court held in *Chmelik,* the words 'arising out of' refer to the origin or cause of the accident and presuppose some causal connection between the employment and the accidental injury. It must have its origin in some risk connected with or incidental to the employment. 31 Ill. 2d 272, 277.

Not all parking-lot accidental injuries that may have been sustained in the course of the employ-

ment are compensable. A personal deviation by an employee can break the causal link with the employment. (*Aaron v. Industrial Com.*, 59 Ill. 2d 267.) Also, if the accident resulted from some risk personal to the employee and not incidental to the employment, the injury is not compensable. *Fisher Body Division, General Motors Corp. v. Industrial Com.*, 40 Ill. 2d 514."

See also *C. Iber & Sons, Inc. v. Industrial Com.* (1980), 81 Ill. 2d 130.

The testimony shows that, on the morning of his death, decedent, in severely cold weather, was required to walk 2,100 feet through drifted snow in a strong wind from the employees' parking area to his place of employment. At the time of his collapse he had walked approximately 1,200 feet. There were conflicting medical opinions concerning whether these factors contributed to an acute myocardial infarction which caused his death. It is the function of the Industrial Commission to make determinations of fact, and when the medical testimony is conflicting this court will not set aside the decision of the Industrial Commission unless it is contrary to the manifest weight of the evidence. (*McLean Trucking Co. v. Industrial Com.* (1978), 72 Ill. 2d 350, 357; *Owens-Corning Fiberglas Corp. v. Industrial Com.* (1977), 66 Ill. 2d 247, 252.) There is evidence from which the Industrial Commission could have concluded that the stress and exposure involved in walking from the parking area to his place of employment was a contributing factor in decedent's death, and it was for the Industrial Commission to determine whether there was a causal relationship between the employment and the injury. *County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10.

We consider next respondent's contention that it was prejudicial error "for the Industrial Commission to fail to answer [respondent's] request for special finding." We

have examined the five requests for special findings submitted by respondent and hold that the award of necessity is based on findings adverse to respondent on four of the requests. The fifth request was framed in general terms, and the Industrial Commission, in its discretion, could decline to answer it. (*Guardian Electric Manufacturing Co. v. Industrial Com.* (1973), 53 Ill. 2d 530.) On this record the failure to make specific findings in response to the requests was not error.

We consider next respondent's contention that Dr. Bettasso's opinion was improperly based on matters not included in the hypothetical question propounded to him. The transcript shows that Dr. Bettasso's opinion was based on matters which were in evidence at that time and that any reference to the testimony or records of Dr. Lukancic was specifically excluded.

Finally we consider respondent's contention that the Commission erred in permitting petitioner to offer the testimony and records of Dr. Lukancic in rebuttal. This testimony and the records were admitted on review and tend to show a preexisting heart condition. Under the circumstances this was proper rebuttal to the testimony of Dr. Buckingham.

We have considered the other contentions made by respondent and find them to be without merit. For the reasons stated the judgment of the circuit court is affirmed.

*Judgment affirmed.*