(No. 56610.—

MARGARET DOMAGALSKI, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Uniroyal, Appellee).

*Opinion filed June 17, 1983.*

230

Anesi, Ozmon, Lewin & Associates, Ltd., of Chicago (Charles E. Anesi and Arnold G. Rubin, of counsel), for appellant.

Discipio, Martay & Caruso, of Chicago (Francis M. Discipio, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

On January 7, 1973, Margaret Domagalski was employed as a security guard for the respondent, Uniroyal. Her duties required her to carry 10-gallon jugs of water to various guard posts in the plant area. In attempting to lift a full water jug from a 3½-foot table, she slipped and fell on the cement floor. As she fell, the water jug struck her right leg, cutting her right hand and bruising her right thigh. She was treated by the plant nurse, who applied ice packs and bandaged the leg. She worked the following day, but was given lighter duties.

On January 18, 1973, the claimant visited her family physician, Dr. Bernard E. Zaworski, and complained of an inability to hold urine and pain in the legs and chest. She had a history of circulatory difficulties in her legs. She took a leave of absence on the advice of her doctor and never returned to work. While under treatment by Dr. Zaworski, she had bladder surgery in late February 1973. The post-surgical evaluation was urinary stress incontinence due to enterocele and vaginal vault prolapse. She was hospitalized in May of 1973 and was treated for multiple pulmonary emboli. She had vena cava surgery in a third hospitalization in September of 1973.

On August 8, 1973, Domagalski filed a claim under the

Workmen's Compensation Act (the Act) (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*) for the injuries she claimed resulted from her accident on January 7, 1973. The claim form described the injuries as an "injured right leg, right index finger and stomach while working."

The claimant's chest pain intensified in May of 1974. She was hospitalized for one week for tests, medication, and inhalation therapy and remained under the care of Dr. Edwin R. Levine until October 1974.

At the hearing before the arbitrator the parties stipulated, *inter alia*, that the claimant "sustained accidental injuries arising out of and in the course of the employment." While listing the questions in dispute, the arbitrator stated:

> "I understand that the Respondent is asking the Petitioner to prove, if possible, a causal relationship between the incident of January 7, 1973, and the condition of ill being now complained of."

A claim form, dated January 19, 1973, was offered into evidence by the respondent at the arbitrator's hearing. In the top half of the form, the claimant gave a negative response to the question, "Was an accident or injury involved?" The balance of the form, completed by Dr. Zaworski, included these notations:

> "Diagnosis: Urethral stenosis - Vaginal prolapse - Enterocele.
>
>        \*     \*     \*
>
> In your opinion was the patient's disability a result of patient's employment? No X."

Dr. Levine testified that he was unable to make a diagnosis following his examination of the claimant on March 19 and May 11 of 1974. On May 29, 1974, he had the claimant admitted to the intensive-care unit of a hospital for treatment of pulmonary emboli. His testimony at the hearing before the arbitrator was:

> "My diagnosis is and has been that she has pulmonary emboli and infarction in the lung, in both lungs which arose and continues to arise from the veins in both legs.

They are inflamed with blood clots in both legs and that these are draining and producing blood clots in the lung and that this condition continues despite all the therapy that I have given her."

Dr. Levine further testified that in his opinion the trauma sustained by the claimant on January 7, 1973, could be "sufficient and ample to account for [her] subsequent condition of ill being."

On cross-examination, Dr. Levine stated that, if he had been the claimant's physician in 1973, he would not have performed bladder surgery if there was any indication that the patient was suffering from a pulmonary embolism. He also admitted that the embolism could have resulted from the bladder surgery and that there was no way of determining where the embolism originated, but that it could have come from the pelvic area.

Various medical reports received in evidence contained this information: the 48-year-old claimant began smoking at the age of 19 and smokes a pack of cigarettes a day; she has given birth to three children, the last by Cesarean section; following her third delivery she underwent a tubal ligation; subsequently, she had corrective surgery in an attempt to have children again; about one year after each childbirth she had surgery on both legs to strip varicose veins; and she had a hysterectomy in 1970.

At the conclusion of the hearing, the arbitrator awarded the claimant compensation for temporary total disability.

Both parties petitioned for review before the Industrial Commission. At the hearing on review, Uniroyal introduced a medical report, dated September 29, 1975, of Dr. William B. Buckingham, who had examined the claimant at the employer's request. The report concluded:

"In my opinion the cause of the pulmonary emboli was the bladder surgery which preceded the onset of the pulmonary emboli by approximately seven or eight weeks. She had evidence of infection and also had pelvic surgery

with the description of adhesions from previous cesarean section. All of these things are precipitating events for the development of phlebothrombosis in the venus system in the lower extremities. The episode with the water bottle in which she sustained some cuts and trauma in January, 1973, in my opinion had nothing to do with the production of the pulmonary emboli. I believe that her stress incontinence was secondary to relaxation of the pelvic structures which in turn was secondary to the previous vaginally delivered pregnancies. In my opinion there is no clinical evidence that could be related to the pulmonary emboli until after the patient had the pelvic surgery."

On February 4, 1976, the Commission filed its decision on review denying Domagalski's claim "for the reason that the said accidental injuries did not arise out of and in the course of the employment." Domagalski filed a petition for a writ of *certiorari* in the circuit court of Will County on February 13, 1976. On February 27, 1976, the Industrial Commission, acting *sua sponte*, filed a "corrected decision on review" holding that the claimant suffered accidental injuries on January 7, 1973, arising out of and in the course of her employment, but denying her claim for the reason "that the condition of ill being complained of by the petitioner, at the present time, is not causally related to the accidental injury sustained on January 7, 1973."

On March 31, 1982, the circuit court of Will County confirmed the February 4, 1976, decision of the Industrial Commission. The circuit court order stated, *inter alia*, that the "corrected decision" of February 27, 1976, was a nullity, that the finding of the Commission in its initial decision "that the accidental injuries claimed by petitioner did not arise out of and in the course of her employment is not contrary or opposite to the total stipulation of the parties [that the claimant sustained accidental injuries arising out of and in the course of the employment]," that the finding "was sufficiently broad to include therein that the condition of ill being complained of by the petitioner was not

causally related to her accidental injury which was not serious," and that the decision of the Industrial Commission was not against the manifest weight of the evidence, nor contrary to law. The record does not explain the incredible delay in completing this Workers' Compensation Act proceeding. The claimant brought a direct appeal to this court under our Rule 302(a). 73 Ill. 2d R. 302(a).

Uniroyal contends that the circuit court lacked jurisdiction to review either decision of the Industrial Commission. Section 19(f)(1) of the Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.19(f)(1)) provides that a circuit court shall "have power to review" a decision of the Industrial Commission if a petition for a writ of *certiorari* is filed within 20 days of the receipt of notice of the Commission's decision. Uniroyal argues that the "corrected decision" of February 27, 1976, became final and is dispositive of Domagalski's claim, since neither party appealed from the corrected decision within the statutory 20-day period. The claimant argues that the "corrected decision" was a nullity and, thus, for purposes of section 19(f)(1), there was no February 27, 1976, decision for which a writ of *certiorari* could be sought. The circuit court's agreement with Domagalski on this was correct.

Section 19(f) of the Workmen's Compensation Act provides, in part, that "the Commission may on *** its own motion, or on the motion of either party, correct any clerical error or errors in computation within 15 days after the date of receipt of *** any decision on review of the Commission and shall have the power to recall the original *** decision on review, and issue in lieu thereof such corrected *** decision." Ill. Rev. Stat. 1973, ch. 48, par. 138.19(f).

The record shows that the Industrial Commission did not file its "corrected decision" until 23 days after its first decision, and until after the circuit court had issued a writ of *certiorari*. The February 27, 1976, decision was therefore of no effect. When the Commission filed its "corrected

decision," it had already lost jurisdiction of the case. This situation is unlike that in *International Harvester v. Industrial Com.* (1978), 71 Ill. 2d 180, and *Schumann v. Industrial Com.* (1975), 61 Ill. 2d 241, where the corrected decisions were held to be effective though they were filed after the expiration of the 15-day statutory period. In those cases, unlike here, a petition for correction had been filed within 15 days of receipt of the initial decision on review. The narrow holding in those cases was that the filing of a motion for correction within the 15-day period kept jurisdiction of the matter in the Industrial Commission. Domagalski could not, in effect, appeal from a decision which, under the statute, never became effective. Since the "corrected decision" was a nullity, the circuit court properly considered whether the Industrial Commission's February 4, 1976, decision was contrary to the manifest weight of the evidence. We now consider that question.

The stipulation of the parties notwithstanding, the Commission denied Domagalski's claim on the ground that her injuries did not arise out of and in the course of employment. The claimant, citing *General Electric Co. v. Industrial Com.* (1952), 411 Ill. 401, contends that the Commission was without authority to enter an order contrary to the terms of the stipulation. The stipulation in *General Electric* was that the employer had provided medical services to the claimant. This court said that "a stipulation by the parties as to the facts is conclusive so long as it stands." (411 Ill. 401, 405; see also T. Angerstein, Illinois Workmen's Compensation secs. 1975, 1976 (rev. ed. 1952).) Different from *General Electric*, the stipulation which the claimant here attempts to enforce concerned a question of law, *viz,* whether her injuries arose out of and in the course of employment. Parties cannot bind a court by stipulating to a question of law or the legal effect of facts. *People v. Levisen* (1950), 404 Ill. 574; *National Bank v. Murphy* (1943), 384 Ill. 61.

Although a reviewing court might draw different inferences, the Industrial Commission finding will not, of course, be set aside unless it is contrary to the manifest weight of the evidence. (*Millis v. Industrial Com.* (1982), 89 Ill. 2d 444.) The words "arising out of" refer to the origin or cause of the accident and presuppose a causal connection between the employment and the accidental injury. (*Greene v. Industrial Com.* (1981), 87 Ill. 2d 1; *Chmelik v. Vana* (1964), 31 Ill. 2d 272.) "For an injury to arise out of one's employment the injury must have an origin in some risk connected with or incidental to the employment so that there is a causal connection between the employment and the accidental injury." (*Fire King Oil Co. v. Industrial Com.* (1976), 62 Ill. 2d 293, 295.) The resolution of whether there is a causal connection between the claimant's injuries and the employment is uniquely within the province of the Industrial Commission. (*Goldblatt Brothers, Inc. v. Industrial Com.* (1981), 85 Ill. 2d 172, 177-78; *Mid-City Architectural Iron Co. v. Industrial Com.* (1980), 83 Ill. 2d 34, 41.) Too, the Commission's resolution of conflicting medical evidence will not be disturbed unless against the manifest weight of the evidence. (*Garrison v. Industrial Com.* (1980), 83 Ill. 2d 375.) Our examination of the record shows that the Industrial Commission's finding was not against the manifest weight of the evidence.

For the reasons given, the judgment of the circuit court of Will County is affirmed.

*Judgment affirmed.*